## GRACE et al. v. UNITED STATES. *

(Circuit Court of Appeals. Fifth Circuit. February 12, 1925. Rehearing Denied March 10, 1925.)

No. 4312.

**1. Indictment and information ⬅137(4)—Motion to quash addressed to discretion of court.**

Overruling of a motion to quash on the ground that the indictment was found on incompetent evidence *held* within the discretion of the court.

**2. Conspiracy ⬅43(6)—Indictment need not particularly describe offense which was the object of the conspiracy.**

In an indictment for conspiracy to transport, conceal, etc., motor vehicles, knowing same to have been stolen, in violation of National Motor Vehicle Theft Act, §§ 3, 4 (Comp. St. Ann. Supp. 1923, §§ 10418d, 10418e), it is unnecessary to set out the facts relating to the theft.

**3. Criminal law ⬅13—Motor Vehicle Theft Act held constitutional.**

National Motor Vehicle Theft Act (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f) *held* constitutional and valid.

*Certiorari denied 45 S. Ct. 637, 69 L. Ed. ——.

**4. Witnesses ☞240(2) — Permitting leading questions discretionary.**

Permitting leading questions to witnesses is within the sound discretion of the court.

**5. Criminal law ☞814(3)—Requested instructions must have basis in the evidence.**

A court is not required to charge propositions of law, however correctly stated, unless the evidence before the jury justifies them.

**6. Criminal law ☞811(4)—Requested instruction as to effect of good character held properly refused.**

A requested instruction that "the good character of defendants, taken with other evidence, may create a reasonable doubt," *held* properly refused as unduly accentuating evidence of good character.

**7. Criminal law ☞889—Court may direct correction of verdict.**

It is within the province of the court to have a verdict corrected to conform to the actual finding of the jury, either in open court or by allowing the jury to retire.

In Error to the District Court of the United States for the Western District of Louisiana; William B. Shepard, Judge.

Criminal prosecution by the United States against W. Garland Grace and others. Judgment of conviction, and defendants bring error. Affirmed.

J. M. Foster and Frank J. Looney, both of Shreveport, La., and H. S. Powell, Jos. Mahoney, and Pat McNalley, all of El Dorado, Ark. (H. K. Smith, of Shreveport, La., on the brief), for plaintiffs in error.

Philip H. Mecom, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La., and Allan Sholars, Sp. Asst. U. S. Atty., of Monroe, La.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. On October 10, 1923, an indictment was returned at Monroe, in the Western district of Louisiana, against the plaintiffs in error, namely, W. Garland Grace, Andrew H. Colvin, Mabe T. Hall, Claude T. Grace, Bird Grace, Doyle Primm, Genie Duck, Walter Robinson, Jerry Graves, J. B. Hardy, and Clay Bowers, and 24 others, hereinafter referred to as the defendants, charging them under section 37, Penal Code (Comp. St. § 10201), with a conspiracy to commit an offense against the United States, to wit, to violate the act of Congress, October 29, 1919, known as the National Motor Vehicle Theft Act (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f), which act makes it an offense to "transport or cause to be transported in in-

terstate or foreign commerce a motor vehicle, knowing the same to have been stolen," and to "receive, conceal, store, barter, sell, or dispose of any motor vehicle, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen." The term "motor vehicle" by the terms of the act includes "automobile," "automobile truck," and virtually every conceivable variety of self propelled vehicle on land.

The indictment contains 17 counts. The first count charges the conspiracy, and, omitting the caption, names, and jurisdictional averments, the material allegations are these:

"The defendants did willfully, unlawfully, fraudulently and feloniously conspire, plan, confederate, and agree together, and with each other, and with divers persons, to your grand jurors unknown, to commit an offense against the United States of America, that is, that they, the defendants, would commit several acts made crimes and offenses by the act of Congress of the United States of October 29, 1919, known as the National Motor Vehicle Theft Act, in and by willfully and feloniously transporting and causing to be transported in interstate commerce from and out of the state of Arkansas, to and in to the state of Louisiana, and Western district of Louisiana, and from and out of the state of Louisiana, and Western district of Louisiana, to and in to the state of Arkansas, certain motor vehicles, knowing the same to have been stolen; and, further, in and by willfully, knowingly, unlawfully and feloniously receiving, concealing, storing, bartering, selling, and disposing of motor vehicles moving as a part of, and constituting, interstate commerce knowing the same to have been stolen, which said motor vehicle so to be received, concealed, stored, bartered, sold, and disposed of, as aforesaid, would be motor vehicles that had been stolen in the state of Arkansas, and in course of being transported in interstate commerce from and out of the state where stolen, as aforesaid, to and in to the state of Louisiana, and Western district of Louisiana.

**"Overt Act.**

"That in pursuance of the said unlawful conspiracy, and to effect the object of the same, the said ———— did transport, and cause to be transported, in interstate commerce, a certain motor vehicle, to wit, a Ford touring car, motor number 6611067, from El Dorado, in the state of Arkansas, to and in to the parish of Lincoln, state

of Louisiana, Western district of Louisiana, and within the jurisdiction of this honorable court, at the time of said transporting of said motor vehicle, the said ———— well knew the same to have been stolen. * * *"

The remaining counts refer to the first count for the conspiracy charge. The overt acts charged in counts 1 to 9 are practically the same with a difference as to the persons committing the act and the automobiles transported. Counts 10 and 12 to 17 charge sales of automobiles, and count 11 charges concealment of an automobile.

The defendants filed a motion to quash the indictment on the following grounds, to wit: That the indictment is invalid because not found by the grand jury on competent evidence; that the indictment does not charge an offense; that the act of October 29, 1919, is unconstitutional as not within the authority of Congress to enact and is invalid because of uncertainty and indefiniteness. The motion to quash was overruled. A severance was granted as to nine of the defendants and the case went to trial. Thirteen of the defendants were dismissed by the court before the case was submitted to the jury, and verdicts of guilty were returned against the 13 remaining defendants. After the verdict, motions in arrest of judgment and for a new trial were overruled, and the court imposed a general sentence on each defendant, none exceeding 18 months' imprisonment, with fines not exceeding $500 against 4 of them. The defendants convicted sued out this writ of error, but before the argument in this court 2 of them withdrew their writs. This leaves before the court only the defendants named above.

The record contains some 1,736 pages. There are 102 bills of exception and 118 assignments of error, many of them unnecessary and some of them frivolous, a practice to be condemned and which has been frequently adversely criticized by the Supreme Court. Nearly all of the assignments of error might be disregarded on strict application of rule 11 of this court (set out in the margin)[1] but as is usual when a record of this size is piled up by zealous and industrious counsel, very few of the errors assigned are insisted upon or have been argued. Only these assignments argued orally and in the brief will be considered.

[1] Under the practice obtaining in Louisiana, it is usual to incorporate in one pleading objections to an indictment properly raised by demurrer together with other objections requiring proof to sustain them, usually raised by motion to quash or plea. Considering the allegation that the grand jury returned the indictment on incompetent evidence, the rule is that a motion to quash is ordinarily addressed to the discretion of the court, and therefore a refusal to quash cannot generally be assigned as error. Logan v. United States, 144 U. S. at page 282, 17 S. Ct. 617, 36 L. Ed. 429. The motion was not verified, and no affidavits in support of the allegations were submitted to the court, although an attempt was made to introduce evidence to sustain the motion by putting the district attorney on the stand. It is only in rare cases that a motion of this kind should be considered. It would be utterly useless for prosecuting officers to seek an indictment on incompetent evidence, as no conviction could result from such evidence before the trial jury. If the court stopped in every case to go into the question of what transpired in the grand jury room, the prompt and orderly administration of justice would be very much hampered and to no good end. There was no abuse of discretion in overruling the motion on this ground. Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138.

[2] With regard to the objections as to its form, the language of the indictment tracks the statute. It would add nothing to the allegations to say, as the defendants contend should have been done, that the automobiles had previously been stolen, or to set out the names of the true owners, or describe the localities where the theft occurred. The crime charged is a conspiracy

---

[1] XI. Assignment of Errors.—The plaintiff in error or appellant shall file with the clerk of the court below, with his petition for the writ of error or appeal, an assignment of errors, which shall set out separately and particularly each error asserted and intended to be urged. No writ of error or appeal shall be allowed until such assignment of errors shall have been filed. When the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected. When the error alleged is to the charge of the court, the assignment of errors shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused. Such assignment of errors shall form part of the transcript of the record and be printed with it. When this is not done, counsel will not be heard, except at the request of the court; and errors not assigned according to this rule will be disregarded, but the court, at its option, may notice a plain error not assigned.

to transport, conceal, and sell, knowing the automobiles to have been stolen, and not the crime of larceny of the article. The indictment fully informed defendants of what they had to meet.

[3] This brings up for consideration the third ground urged in the motion, i. e., that the act of October 29, 1919, is unconstitutional and uncertain. Very little need be said on the question. As yet, the Supreme Court has not had occasion to pass on it, but the Court of Appeals for the Fourth Circuit, in Kelly v. United States, 277 F. 405, and the Court of Appeals of the District of Columbia, in Whitaker v. Hitt, 285 F. 797, 52 App. D. C. 149, 27 A. L. R. 951, in well-considered opinions, have held the act to be constitutional. It is urged by defendant that the power to punish for stealing an automobile is one reserved to the states, as is also the power to prohibit the importation of a stolen automobile. Ordinarily this is true, but the Supreme Court has drawn the line very clearly between the power of Congress and the power of the states over interstate commerce. Under the pretense of regulating interstate commerce, or exercising the taxing power, Congress cannot infringe the power reserved to the states of regulating their own internal affairs. Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1913E, 724, dealing with the first child labor act, and the Child Labor Tax Case, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, which title speaks for itself. On the other hand, the Supreme Court has repeatedly upheld the power of Congress to adopt laws to prevent the commission of criminal, immoral, or fraudulent acts through the medium of interstate commerce. The Lottery Case, 188 U. S. 321, 23 S. Ct. 321, 47 L. Ed. 492; Hipolite Egg Co. v. United States, 220 U. S. 45, 31 S. Ct. 364, 55 L. Ed. 364; Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Hoke v. United States, 227 U. S. 308, 33 S. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905. In the last-cited case, dealing with the White Slave Act (Comp. St. §§ 8812–8819) the court said:

"The principle established by the cases is the simple one, when rid of confusing and distracting considerations, that Congress has power over transportation 'among the several states'; that the power is complete in itself, and that Congress, as an incident to it, may adopt not only means necessary but convenient to its exercise, and the means may have the quality of police regulations."

It is obvious that the National Motor Vehicle Theft Act is in the same category as the White Slave Act and the Pure Food and Drugs Act (Comp. St. §§ 8717–8728). An automobile is an instrument of transportation, ordinarily innocent of itself, but when it has been stolen and is in the custody of the thief, or another who knows it is stolen, it has lost its innocent character. Congress could well take notice of the great number of automobiles stolen annually throughout the United States, and also of the fact that their transportation into other states would facilitate their theft. It was proper, therefore, in order to protect interstate commerce from such wrongful use, to make it an offense to transport a stolen automobile in interstate commerce or to sell it or conceal it while still in interstate commerce. It may be noted that the act does not attempt to punish the mere stealing of an automobile or the receiving, selling, or concealing of it, etc., knowing it to be stolen, either before interstate transportation has begun, or after it has terminated. The act is carefully drawn; it is not uncertain nor indefinite, and does not exceed the undoubted power of Congress to adopt. We must hold that the act is constitutional and valid.

[4] The remaining assignments of error require only passing notice. Defendants have argued in the brief some 14 assignments of error predicated on the admission and rejection of evidence. As noted at the outset, the assignments themselves are not complete as required by rule 11 of this court. On referring to the bills of exceptions, it appears that in some no grounds of objection were stated. In others, the evidence set out in the bills is so scanty as to make it extremely difficult to determine the correctness of the ruling. From what does appear, however, it cannot be said that the rulings were erroneous. Some of the objections are on the ground that the questions were leading. As to this, it is elemental that the interrogation of reluctant or adverse witnesses by questions in leading form is always within the sound discretion of the court. There is no merit in any of these assignments.

[5, 6] Defendants have also argued in the brief some 20 assignments of error running to portions of the charge of the court and to the refusal of special charges requested. The court was requested to charge, in several forms, that if the defendants committed the acts charged under an agreement

other than that charged in the indictment, the jury should acquit. It is not shown that there was any evidence on which to base these requests. It is elemental that the court is not required to charge propositions of law, however well stated, unless the evidence before the jury justifies them. The defendants requested the court to charge directly "that the good character of the defendants, taken with other evidence, might create a reasonable doubt." This request is taken bodily, apparently, from the opinion in Edgington v. United States, 164 U. S. 361, 17 S. Ct. 72, 41 L. Ed. 467. Since the rendition of that decision, the trial courts have been frequently requested to so charge and usually have refused. The Supreme Court, in the Edgington Case, supra, was simply giving its opinion as to what effect the evidence of good character might have and not laying down the rule as to the charge to be given by the trial court. To give the charge as drawn would unduly accentuate evidence of good character. As well might counsel ask the court to charge on any other evidence before the jury that it was sufficient to create a reasonable doubt. This would infringe the province of the jury. The charge was properly refused. However, it would appear that the court charged fully on the effect to be given testimony of good character and took occasion to say: "This testimony may be considered in the defendants' favor to the extent of a reasonable doubt." The general charge of the court on this point was certainly as favorable as the defendants could expect. The defendants also asked the court to charge that confessions or admissions made after the conspiracy was at an end were not to be received as to coconspirators. This was a correct statement of the law, but it appears from the transcript that the judge so charged the jury when admitting the alleged confessions, and the point is again fairly covered in the general charge of the court. The charge of the court states the law applicable to the case fully and fairly covers all of the special requests of defendants that were proper to have been given.

Defendants also assign error to the refusal of the court to direct a verdict in their favor, both at the conclusion of the government's evidence in chief and at the conclusion of the whole case and to sustain a motion in arrest of judgment. There was ample evidence before the jury, both direct and circumstantial, to sustain the verdict.

[7] Objection is also made to the sufficiency of the verdict. The jury returned into court and the verdict in the following words was handed to the judge: "We, the jury, find the accused guilty as charged, with the following exceptions," naming the defendants acquitted. The court then directed the foreman to correct the verdict and put in it the names of those the jury had found not guilty and of those the jury had found guilty. To this a bill of exceptions was reserved by defendants. The jury then retired, corrected the verdict, and returned into court; the verdict reading, "We, the jury, find the following guilty as charged," naming the defendants so found guilty, and, "We, the jury, find the following accused not guilty," naming these acquitted. The verdict in the form first returned was sufficiently specific and the correction added very little to it. Had it been defective, however, it was within the province of the court to have it corrected to conform to the actual finding of the jury, either in open court or by allowing the jury to retire. No error can be predicated on this circumstance.

We find no reversible error in the record. The judgment will be affirmed.