**John GASSER, Individually and John Gasser d/b/a Mede, Inc. and Black Doggs, Plaintiff,**

v.

**Earl C. MORGAN, Individually and in his official capacity as District Attorney of the Tenth Judicial Circuit of Alabama; Charles A. Graddick, Individually and in his official capacity as Attorney General of the State of Alabama; and Fob James, Individually and in his official capacity as Governor of the State of Alabama, Defendants.**

No. CV 80–G–0714–S.

United States District Court,
N. D. Alabama, S. D.

Sept. 10, 1980.

Judith S. Crittenden, Clark, James & Crittenden, Thomas B. Leonard, III, Civil Liberties Union of Alabama, Birmingham, Ala., for plaintiff.

Robert G. Cahill, Deputy Dist. Atty., Birmingham, Ala., for defendant Earl C. Morgan.

Rosa G. Hamlett, Asst. Atty. Gen., Montgomery, Ala., for defendants Graddick and James.

## MEMORANDUM OPINION

GUIN, District Judge.

This case came on to be heard on the application for a preliminary injunction by the plaintiff, John Gasser, individually and John Gasser d/b/a Mede, Inc., and Black Doggs, and cross–motions for summary judgment by plaintiff and defendants. The court is of the opinion that Section 20–2–75

of the Code of Alabama 1975, as amended on May 23, 1980, is constitutional as interpreted by the court except the provisions making constructive knowledge criminal. Therefore, for the reasons stated herein, defendants' motion for summary judgment is granted except as to the constructive knowledge provisions, and plaintiff's motion for summary judgment is denied except that it is granted as to the constructive knowledge provisions. The application for injunction is denied except as to the constructive knowledge provisions. As to those provisions, a final injunction is granted.

The issue is the constitutionality of the Alabama drug paraphernalia statute, Section 20–2–75. The statute reads as follows:

Section 1. Section 20–2–75 of the Code of Alabama 1975, is hereby amended to read as follows:

"(1) 'Drug related object' means any instrument, device, or object which is designed, produced or marketed as useful primarily for one or more of the following purposes:

"(A) To inject, ingest, inhale, or otherwise introduce into the human body marijuana or a controlled substance;

"(B) To enhance the effect on the human body of marijuana or a controlled substance;

"(C) To test the strength, effectiveness, or purity of marijuana or a controlled substance;

"(D) To process or prepare for introduction into the human body marijuana or a controlled substance;

"(E) To conceal any quantity of marijuana or a controlled substance;

"(F) To contain or hold marijuana or a controlled substance while it is being introduced into the human body.

"(2) It shall be unlawful for any person or corporation, knowing the drug related nature of the object, to sell, lend, rent, lease, give, exchange, or otherwise distribute to any person any drug related object. It shall also be unlawful for any person or corporation, knowing the drug related nature of the object, to display for sale, or possess with the intent to distribute, any drug related object. Unless stated within the body of the advertisement or notice that the object that is advertised or about which information is disseminated is not available for distribution of any sort in Alabama, it shall be unlawful for any person or corporation, knowing the drug related nature of the object, to distribute or disseminate in any manner to any person any advertisement of any kind or notice of any kind which gives information, directly or indirectly, on where, or how, or from whom, or by what means any drug related object may be obtained or made. 'Knowing' as used herein means either actual or constructive knowledge of the drug related nature of the object, and a person or corporation has constructive knowledge of the drug related nature of the object if he or it has knowledge of facts which would put a reasonable and prudent person on notice of the drug related nature of the object.

"(3) It shall be unlawful for any person or corporation, other than a licensed pharmacist or practitioner licensed to dispense legend drugs, to sell, lend, rent, lease, give, exchange, or otherwise distribute to any person a hypodermic syringe or needle designed or marketed primarily for human use. It shall be an affirmative defense that the hypodermic syringe or needle was marketed for a legitimate medical purpose.

"(4) It shall be an affirmative defense that the person to whom the drug related object or advertisement or notice was distributed had a prescription from a licensed medical practitioner or psychiatrist for marijuana or the controlled substance for which the object is primarily intended to be used. It is also an affirmative defense that the drug related object was designed or marketed as useful primarily for veterinary or agricultural purposes.

"(5) For a first offense, any person or corporation which shall violate any provision of this section shall be guilty of a Class A misdemeanor. For a second of-

fense, the defendant shall be guilty of a Class C Felony.

"(6) All instruments, devices, and objects which are distributed or possessed in violation of this section are hereby declared to be contraband and subject to forfeiture as provided for in Section 20–2–93 of the Code of Alabama 1975."

Section 2. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall · not affect the part which remains.

Section 3. All laws or parts of laws which conflict with this act are hereby repealed.

Section 4. This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

Prior to the filing of this action, plaintiff had been informed by vice and narcotics officers as well as defendant District Attorney Earl C. Morgan that plaintiff was selling articles they considered to be drug related within the meaning of Section 20–2–75, and plaintiff had been provided with a copy of the section by the officers.

Plaintiff contends that the Alabama drug paraphernalia statute is unconstitutional in that the language defining "drug related object" in Section 1 of the Alabama statute is overbroad and vague, and thus offends the due process clause of the fourteenth amendment. He further contends that the due process clause is violated because the statute does not satisfy the rational relationship test (since the statute arguably applies to innocent items and because it encourages selective enforcement), that the statute is overbroad and infringes upon speech protected by the first amendment, that the statute violates the rights of privacy guaranteed by the first and ninth amendments (since it affects the development and expression of one's interests, intellect, personality, and tastes), that the statute interferes with interstate commerce, and that it violates the equal protection clause of the fourteenth amendment.

Defendants cite well–recognized definitions of the words of the statute and argue that the statute gives adequate notice, since the Supreme Court has stated that absolute clarity is not required and that a requirement (express or implied) of specific intent or guilty knowledge can save an otherwise vague statute. Lastly, defendants contend that a merchant or supplier need not himself intend to use property illegally. His "guilty knowledge" of the illegal use his buyers will make of his merchandise is sufficient. Defendants cite *United States v. Ragland*, 306 F.2d 732 (4th Cir. 1962) and *United States v. 2265 One–Gallon Paraffined Tin Cans*, 260 F.2d 105 (5th Cir. 1958) in support of this last contention.

The cases cited by the plaintiff do not recognize the duty of the court to interpret the statute in a constitutional way. Courts may imply specific intent into a statute if such a construction is necessary to save it. Plaintiff's contentions will not stand, since this court does construe the statute as requiring specific intent.

*Vagueness*

This court will first discuss the vagueness issue. This is the contention argued the most forcefully.

 Laws enacted by the legislature carry with them a presumption of constitutionality. Such a presumption may be rebutted by a finding that a law is so vague or overbroad that it provides no notice to reasonable citizens of common understanding and intelligence that an act is illegal. *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). However, absolute precision in drafting laws is not demanded. Indeed, the Supreme Court has said:

A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessi-

ties of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

*Boyce Motor Lines v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330–31, 96 L.Ed. 367, 371 (1952) (citations omitted). The test of constitutionality is not precision in language but the existence of reasonable notice; that is, an "ascertainable standard of guilt." *Winters v. People of State of New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948). Furthermore, vagueness may be cured by an interpretation given to a statute by a court. *United States v. Cooper Corporation*, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941); *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). In construing a statute, the courts consider the intent of the legislature in enacting the statute. *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922). Moreover, if a law can be interpreted in two ways and one interpretation renders the law constitutional while the other renders it unconstitutional, the court *must* give the law the interpretation that would render it constitutional. *Screws v. United States, supra; McCullough v. Commonwealth of Virginia*, 172 U.S. 102, 112, 19 S.Ct. 134, 138, 43 L.Ed. 382 (1898). *See, United States v. Menasche*, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955); *Sun Pub. Co. v. Walling*, 140 F.2d 445, *cert. denied* 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564 (1944). Similarly, the Supreme Court has often held that a statute otherwise void for vagueness is saved by the inclusion of a specific mens rea as an element of the crime. *See United States v. International Minerals and Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Boyce Motor Lines, Inc. v. United States, supra; Screws v. United States, supra; United*

*States v. Ragen*, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383 (1942); *Gorin v. United States*, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941); *Omaechevarria v. Idaho*, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763 (1918). Furthermore, such a specific mens rea may be implied by a court even in the absence of words like "intent." *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

### Vagueness Cured by Specific Mens Rea

■ An ascertainable standard of guilt may be achieved through the requirement of a specific mens rea in a statute. Examples of specific mens rea are intent, willfulness and knowledge. W. LaFave and A. Scott, Handbook on Criminal Law, § 11 at 86 (1972).

The Supreme Court has repeatedly upheld statutes against a vagueness challenge even when the only expressed mental requirement of the statute was knowledge. In many such instances, however, knowledge was construed to mean "intent." *Boyce Motor Lines v. United States, supra,* is an example. Boyce Motor Lines was prosecuted for violating an Interstate Commerce Commission regulation, today's 18 U.S.C. § 835, which provided that anyone driving a motor vehicle carrying inflammable materials or explosives must eschew "so far as practicable, and, where feasible," crowded tunnels and highways. The company contended that the phrase "so far as practicable, and, where feasible" made the regulation unconstitutionally vague. The Supreme Court upheld the indictment since the statute provided that only those who *knowingly* violated the Commission's regulation could be convicted. The Court explained:

The statute punishes only those who knowingly violate the Regulation. This requirement of presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid. That is evident from a consideration of the effect of the require-

ment in this case. To sustain a conviction, the Government not only must prove that petitioner could have taken another route which was both commercially practicable and appreciably safer (in its avoidance of crowded thoroughfares, etc.) than the one it did follow. It must also be shown that petitioners knew that there was such a practicable, safer route and yet deliberately took the more dangerous route through the tunnel, or that petitioner willfully neglected to exercise its duty under the Regulation to inquire into the availability of such an alternative route.

*Boyce Motor Lines, Inc. v. United States, supra,* 342 U.S. at 342, 72 S.Ct. at 331–32, 96 L.Ed. at 372 (1952). (Citations omitted.) Hence, the Court in *Boyce* construed the word "knowingly" in the statute to mean that the prosecution must prove that there was specific intent to violate the regulation and that the defendant's acts were done willfully and deliberately. The statute does not contain the words "intent," "willful," "deliberate;" the only mental element expressly required by the statute is that of knowledge. The regulation was upheld by the Supreme Court largely because of this requirement of knowledge, which it construed to be the equivalent of intent.

*Morissette v. United States, supra,* further illustrates such a construction of knowledge and also demonstrates that a specific intent requirement can be implied into an offense even when *no* mental element is expressly required by the statute. *Morissette* construed a federal statute, 18 U.S.C. § 641, which punished anyone who "embezzles, steals, purloins, or knowingly converts" the property of the United States Government. The Court said that even though intent was not expressly required by the statute, the element of intent was inherent in the traditional common law crimes of stealing, embezzlement, and purloining. Historically, these three crimes required a specific intent. The Court declared:

> The Government asks us by a feat of construction radically to change the weights and balances in the scales of jus-

tice. The purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries. Such a manifest impairment of the immunities of the individual should not be extended to common–law crimes on judicial initiative.

> . . . . .

> We hold that mere omission from § 641 of any mention of intent will not be construed as eliminating that element from the crimes denounced.

342 U.S. at 263, 72 S.Ct. at 249, 96 L.Ed. at 300. Thus the Court said that specific intent was to be implied into the statute.

Concerning an arguably noncommon–law crime, a knowing conversion, the Court also implied intent. Indeed, this court believes a specific intent was implied. Concerning the effect of the word "knowing" on its implication of intent, the Supreme Court said:

> Congress, by the language of this section, has been at pains to incriminate only "knowing" conversions. But, at common law, there are unwitting acts which constitute conversions. In the civil tort, except for recovery of exemplary damages, the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant.

> . . . . .

> Had the statute applied to conversions without qualification, it would have made crimes of all unwitting, inadvertent and unintended conversions. Knowledge, of course, is not identical with intent and may not have been the most apt words of limitation. But knowing conversion requires more than knowledge that defendant was taking the property into his possession. He must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion. In the case before us, whether the mental element that Congress required be spoken of as knowledge or as intent, would not

seem to alter its bearing on guilt. For it is not apparent how Morissette could have knowingly or intentionally converted property that he did not *know* could be converted, as would be the case if it was in fact abandoned or if he truly believed it to be abandoned and unwanted property.

It is said ... that, if we construe the statute to require a mental element as part of criminal conversion, it becomes a meaningless duplication of the offense of stealing, and that conversion can be given meaning only by interpreting it to disregard intention. But here again a broader view of the evolution of these crimes throws a different light on the legislation.

342 U.S. at 270–71, 72 S.Ct. at 253–54, 96 L.Ed. at 304. Contrasting conversion and stealing, the Court said that a knowing conversion was a knowing and intentional abuse of property rather than a taking of property. The Court held that the jury must be allowed to consider the fact that Morissette claimed that he had innocent intent and the fact that Morissette claimed that he did not know that he was depriving someone of property.

*Morissette* distinguished *United States v. Balint, supra,* saying that sometimes regulatory or malum prohibitum crimes do not have to have intent or knowledge as an element of the offense, and that *Balint* dealt with the sale of narcotics which was a malum prohibitum crime. The court in *Morissette* was careful to state the following:

Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static. The conclusion reached in the *Balint* and *Behrman* [*United States v. Behrman,* 258 U.S. 250, 42 S.Ct. 303, 66 L.Ed. 619] cases has our approval and adherence for the circumstances to which it was there applied. A quite different question here is whether we will expand the doctrine of crimes without intent to include those charged here.

342 U.S. at 260, 72 S.Ct. at 248, 96 L.Ed. at 299.

Indeed, *United States v. Balint* makes it clear that even with statutory crimes scienter may be implied if a court finds that it was the intent of the legislature to require such. *Balint* says:

While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it ..., there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court ....

258 U.S. at 251–52, 42 S.Ct. at 302, 66 L.Ed. at 605 (citations omitted).

The Alabama drug paraphernalia statute creates a statutory malum prohibitum crime. It is apparent from *Morissette* and *Balint* that, even as to an offense which was not a common–law crime, intent may be implied into the statute. It is also apparent from *Morissette* that specific intent may be implied. In order for this mental element to be implied into the Alabama statute, the court must determine whether the Alabama legislature intended specific intent to be an element of the crime created by the drug paraphernalia statute.

Although the above–cited Supreme Court cases did not deal with drug paraphernalia statutes per se, they serve to illustrate the fact that the highest court in our land has construed various criminal statutes by implying an element of intent.

*Carroll v. Oregon State Penitentiary Corrections Division,* 33 Or.App. 83, 575 P.2d 173 (1978), is a specific example of a drug paraphernalia regulation interpreted to require proof of specific intent. In that case, a prison rule did not expressly use the word "intent," and yet the court construed the

rule as requiring a specific intent. A corrections officer had discovered a hand-made pipe in petitioner's cell. The pipe had been constructed from a matchbook and tinfoil and had ashes in it. As a result of this discovery, petitioner was convicted of violating Oregon Administrative Rules, Chapter 291, § 291–40–050(7), and he sought review in the court of appeals. The portion of the rule which applies to narcotics paraphernalia is as follows:

Rules of Prohibited Conduct

(7) Possession, Manufacture, or Use of Dangerous Contraband. No inmate shall possess, manufacture, or use:

\* \* \* \* \* \*

(c) Narcotics or narcotics paraphernalia:

\* \* \* \* \* \*

Oregon Administrative Rules, Chapter 291, § 291–40–050(7). Construing the statute to require specific intent, the court said:

The state argues that since the pipe admittedly could have been used for smoking marijuana or hashish, possession of it constitutes possession of narcotics paraphernalia. We cannot agree. In order to find a person guilty of possession of narcotics paraphernalia it must be shown that the item possessed was used or was intended to be used for use of narcotics. Simply because an item can be used for narcotics does not make possession of that item possession of narcotics paraphernalia, where the item possessed also has a legitimate function and no evidence links the item with narcotics.

575 P.2d at 174. The petitioner's conviction was overturned because there was no evidence to show that he used or intended to use his pipe for drugs.

*Application of Specific Mens Rea to the Alabama Statute*

Section 20–2–75 is not vague because it includes the specific mens rea of knowledge and because this court construes knowledge in Section 1(2) to mean intent[1] and construes Section 1(1) as requiring a specific criminal intent. The court further con-

strues the provision for "constructive knowledge" in the statute to be unconstitutional. However, the severability clause saves the remainder of the statute.

"Specific intent" has been defined in a variety of ways. Sometimes the definition of specific intent includes the concept of intent to break the law and sometimes specific intent is defined as merely the intent to do a certain designated act or merely a bad purpose in addition to the physical act.

The Ninth Circuit in *United States v. Porter*, 431 F.2d 7 (9th Cir. 1970), *cert. denied* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1971), approved the lower court's definition of specific intent which involved the concept of intent to break the law. The definition reads as follows:

"With respect to crimes such as charged in this case, specific intent must be proved before there can be a conviction.

"Specific intent, as the term itself suggests, requires more than a mere general intent to engage in certain conduct.

"A person who knowingly does an act which the law forbids, or knowingly fails to do an act which the law requires, intending with bad purpose either to disobey or to disregard the law, may be found to act with specific intent."

431 F.2d at 9.

"Intent to break the law," however, is not always a part of the definition of specific intent. *United States v. Bryant*, 420 F.2d 1327 (D.C. Cir. 1969) defined specific intent as a "definiteness of intention" and as the intent to commit a further specific act. The court said:

We think the phrase "specific intent to have sexual intercourse" was sufficiently meaningful to the jury to avoid condemnation as plain error. Obviously the term without the word "specific" is clear enough. And the addition of "specific" connotes a requirement of definiteness of intention which is the essence of the matter. . . .

420 F.2d at 1333.

---

1. *See Boyce Motor Lines* and *Morissette, supra.*

The court further said:

... [W]e note specifically that we are not ruling that the defendant would be entitled to that portion of the charges which requires a "purpose to disobey or disregard the law." Similar wording is contained in the Seventh Circuit's Manual on Jury Instructions–Criminal, § 4.04, 33 F.R.D. 523, 550 (1963). But the supporting citations show that it is drawn from cases involving crimes where the intent to break the law may be critical–e. g., a tax evasion case, where fraud is at issue, *see Elwert v. United States*, 231 F.2d 928 (9th Cir. 1956), or a case involving unlawful conversion of Government property, where the defendant claims that he thought the property involved had been abandoned, *see Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)..

Generally, in cases of attempt or assault with intent to commit a substantive crime, the required specific intent is simply "an intent to commit a specific crime," 1 Wharton's Criminal Law § 73 (12th ed. 1967). As for the specific intent in assault with intent to commit rape, "the man's purpose must be to use force, should it be necessary, to overcome the woman's will." 1 Bishop's Criminal Law § 731.5 (9th ed. 1923). Few if any cases of attempted rape will turn not only on intent to do the act, but also on questions of law, and existence of intent to break the law.

420 F.2d at 1333–34, fn. 10.

■ According to LaFave and Scott, Handbook on Criminal Law, § 45, at 343–44 (1972), "general intent" means "an intent to do the physical act–or perhaps recklessly doing the physical act–which the crime requires," and "specific intent" means "some intent in addition to the intent to do the physical act which the crime requires." Breaking and entering is an example of a general intent crime, because it only requires the intent to break and enter the building. However, burglary is a specific intent crime because it not only requires the general intent to break and enter, but it also requires the intent to commit a felony once one enters the building. Unless the prosecution proves this intent to commit a felony, the accused cannot be convicted of burglary. Moreover, larceny involves a general intent to take and carry away an item, but it also involves the specific intent to steal the item. Thus, even though specific intent has been defined in a variety of ways, it is evident that the term requires a criminal or bad purpose.

In Section 1(2) the accused must have the general intent to distribute, display for sale, possess with intent to distribute, or advertise a drug–related item. The specific intent, supplied by a construction of the word "know," is that the accused intend the item to be drug related. However, if the statute is to provide adequate notice, it must inform an individual of the meaning of "drug related" in order to make clear the bad purpose which renders his act illegal.

Section 1(1) defines a "drug related" item as "any instrument, device, or object which is designed, produced or marketed as useful primarily for one or more of the" specified purposes. The statute carefully lists purposes related to the intake, testing, processing and concealing of drugs. Section 1(3) specifically deals with hypodermic needles and should be upheld as constitutional regardless of the vagueness or clarity of the other sections, especially in light of the severability clause.

The general intent required by Section 1(1) is the intent to do the physical act of designing, producing, or marketing. The statute does not expressly specify whether or not these acts must be done by the accused.

■ While the word "intent" does not appear in the statute, a specific intent, if not inherent in the words, "as useful primarily for one or more of the following purposes" may certainly be implied from them. Merely designing, marketing, or selling the item is not sufficient to make it "drug related" under the statute. Something in addition to doing one of those physical acts is required, i. e., the physical acts must be done for a bad purpose. A bad purpose is a mental element. The bad

purpose required is that the items be useful primarily for taking, concealing, etc., illegal drugs. When a bad purpose must be proved before a person can be convicted of a crime, a statute is said to require a specific intent. The criminal purpose in the Alabama statute is akin to criminal solicitation, and it involves the glamorization, facilitation, and encouragement of drug use.

Thus, this court construes the words "as useful" in the Alabama drug paraphernalia statute to mean "with the intent that they be used for." Such an interpretation is supported by common sense, common usage, and the words of the statute. "As useful" is often a short form for "as being useful," which can be interpreted as "to be useful." If someone markets, sells or designs an item "to be useful for the ... purposes" of taking, etc., illegal drugs, he *intends* that they be used for those purposes. Even if "as" is taken in its common meaning of "as if" or "like," intent would be implied. "As if" would require a representation on the part of the designer, seller, or manufacturer that the main purpose of his actions was that the item be used for illegal use of drugs or the like. For example, such a representation might be communicated by a manufacturer through the decorations on his product, or perhaps through his conversation with a wholesale merchant when the manufacturer agrees to fill his order. Even where decor communicates drug relatedness, the item is still required by Section 1(1) to be primarily useful in taking, etc., drugs so that a hairbrush with marijuana leaves painted on it would not be drug related since it is obviously primarily useful for brushing hair and not for the intake of drugs.

The requirement in Section 1(1) that the designer, manufacturer or seller intend that his products be used for the purpose of taking drugs would be sufficient to uphold the drug paraphernalia statute even if "know" in Section 1(2) were not construed to mean intent, *if* the intent requirement of Section 1(1) applied to the *accused*. Then, Section 20–2–75 would resemble the federal statute prohibiting interstate transportation of women for immoral purposes which has been held to be constitutional in *Cami-*

*netti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

Did the Alabama legislature intend for the designer, manufacturer or seller in Section 1(1) to be someone other than the distributor, possessor, displayer or advertiser in Section 1(2)? If so, the legislature would have placed upon the prosecution the burden of proving not only the intent of the accused but also the intent of some third party who designed, manufactured or sold the item.

Adequate notice would still be supplied if Section 1(1)'s intent requirement applied to a third party since the accused in Section 1(2) is required to have specific intent. A person knows his own intentions. This application is supported by cases upholding the constitutionality of the National Motor Vehicle Theft Act, 18 U.S.C. §§ 2312–2313, which holds an accused responsible if he receives, sells, etc., a car knowing that a third party took the car with the intent to steal. This is true even though the accused himself had no intent to steal. Title 18 U.S.C. §§ 2312–2313 has been held constitutional many times. *United States v. Newson*, 144 F.Supp. 464 (W.D.La.1956); *Brooks v. United States*, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699 (1925); *Whitaker v. United States*, 5 F.2d 546 (C.C.A.Cal.1925), *cert. denied* 269 U.S. 569, 46 S.Ct. 25, 70 L.Ed. 416; *Grace v. United States*, 4 F.2d 658 (5th Cir. 1925) cert. denied 268 U.S. 702, 45 S.Ct. 637, 69 L.Ed. 1165 (1925); *Kelly v. United States*, 277 F. 405 (C.C.A.S.C.1921). This court, however, does not believe that it was the intent of the legislature that one who intends that an item be used for illicit drugs be exonerated, if the prosecution cannot prove that a third party also intended the item to be used for taking, etc., drugs.

This court finds that the intent requirement of Section 1(1) refers to the accused, since Section 1(2) refers to the accused and is aimed at the activities of *anyone* who distributes, possesses, displays, or advertises the drug related item—whether he be a manufacturer, a designer, a retailer or a street peddler. This is demonstrated in

Section 1(2)'s liberal use of phrases like "any person" and "anyone who distributes." Thus the words "designed, produced or marketed" serve to emphasize that it is not just the retailer that the statute is aimed at—it is anyone within the line of production and distribution. The legislature is seeking to remind the public that it is not just the retailer who sells, displays, etc., the product who alone could breach the statute. Instead, the legislature made clear that manufacturers and designers can breach the statute since they, too, can sell, display, etc., their wares to manufacturers, wholesalers, retailers or the man on the street.

However, in order to avoid holding the accused responsible for another's intent, one further qualification must be made. This court believes, and so finds, that the legislature did not intend for the prosecution to have to prove the manufacturer's or designer's intent in order to convict the accused when the accused neither manufactured nor designed the product. Instead, this court holds that the reference to the term "produced" and the necessity of proving the producer's intent in Section 1(1) is only applicable if a manufacturer is accused under Section 1(2). Similarly, the word "design" and the necessity of proving the designer's intent is only applicable when a designer is accused under Section 1(2). The statute could have been more precisely worded, but the Constitution does not require that every statute be worded with the utmost precision possible.

■ Intent may be proved through circumstantial evidence, as *United States v. Stagman*, 446 F.2d 489 (6th Cir. 1971); *United States v. McCurry*, 248 F.2d 116 (3rd Cir. 1957), and *Brubaker v. United States*, 183 F.2d 894 (6th Cir. 1950), have held, or through direct evidence. An example of direct evidence would be an eyewitness's testimony of a conversation between a store owner and a customer.

A seller's receipts, course of dealings, attendance at trade shows for drug paraphernalia, are all circumstantial evidence of his intent. Moreover, a seller can be presumed to have read the books, magazines, comic books, and advertisements around his store that explain the use of the items on his shelves and explain the appearance of various drugs decorating the posters, plates, pipes, etc., that he sells. The fact that a seller's rolling papers and other goods have cannabis, and other drug–type decorations, on them is further evidence of his intent, especially if he does not sell tobacco. Intent may be proved circumstantially by an atmosphere of drug pushing that is created when large posters and books which entice people to use drugs appear in the same store. Such an atmosphere could support a finding of fact that the items are not being sold for innocent purposes. It would not be unconstitutional for a jury to find that, under such circumstances, the items were being sold for drug use or "as useful primarily" for such. People who cater to illicit drug users for their own enrichment cannot complain if specific criminal intent is proved.

■ Since specific intent is a necessary constitutional element of the statute and since the court implies it into the statute, the constructive knowledge provision of Section 1(2) cannot be constitutional. The words in the Alabama drug paraphernalia statute which refer to constructive knowledge are "or constructive knowledge" and "and a person or corporation has constructive knowledge of the drug related nature of the object if he or it has knowledge of facts which would put a reasonable and prudent person on notice of the drug related nature of the object." These words are found in the fourth and last sentence of Section 1(2) of the statute and are the only words here held to be unconstitutional.

*Adequate Notice*

Most English words have more than one definition. The court in *J. Wayne Housworth v. Patric Glisson*, 485 F.Supp. 29 (N.D.Ga.1978), states:

... [E]ven statutes that could have been drafted more clearly are saved by their context or judicial gloss which imbues otherwise meaningless words with sufficient content to give fair warning of

the law's scope. *Rose v. Locke* [423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975)], ·supra; *Wainwright v. Stone*, 414 U.S. 21 [94 S.Ct. 190, 38 L.Ed.2d 179] (1973); *Grayned v. City of Rockford* [408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222], *supra*. *Housworth v. Glisson*, at 38. This court has construed the words in Section 1(1) whose meanings are perhaps not immediately made clear by the context. Although "produced" may also mean "exhibited," this court construes it to mean "manufactured" in the statute in question. Similarly, although "designed" may also mean "intended," this court construes it to mean, in the statute in question, "to create or fashion." The legislature clearly had the chain of distribution in view when it wrote the statute, as is seen in the words "anyone who distributes" in Section 1(2). The court in *Brennan v. Harrison County, Mississippi*, 505 F.2d 901, 903 (5th Cir. 1975), holds that there is nothing legally obscure about the meanings of the terms "primary" or "primarily." The Supreme Court has defined "primarily" as meaning "of first importance," "principally" or "fundamentally." *Malat v. Riddell*, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); *Board of Governors v. Agnew*, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408 (1947). "Of first importance" best fits the intention of the legislature concerning Alabama's statute, but all three of these possible definitions mean essentially the same thing in this context.

This construction by this court cures any alleged vagueness in the statute's wording.

*Other Due Process Issues*

■ *Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940, 957 (1934), establishes the rational relationship test for determining whether or not a statute breaches the due process clause. The Alabama statute meets this test. Its purpose is to reduce drug use and the means established is the curtailment of the education, facilitation, glamorization and solicitation of drug use–i. e., the distribution, possession with intent to sell, display or advertisement of articles intended and represented as useful primarily for drugs. Function of the article and intent of the accused are the essential considerations for determining an article's drug–related nature.

The intent requirement does not destroy the rational relationship between the means and the end by limiting the types of functional items that are illegal. Instead, the intent requirement keeps the statute from being overbroad precisely because it does focus on the only pragmatic and rational means to the desired end. Many items used for drugs have legitimate purposes. There is scarcely an item in existence that cannot be adapted to both good and bad purposes. It is not practical to ban completely items with legitimate purposes. It is the encouragement of the *illegal* use of such items that would result in increased drug use. Thus the restriction of activities done with the specific intent to promote illicit drug use is a rational means to the statute's end.

The only logical way to confine items with legitimate uses to their legal use is to make criminal intent an element of the crime. For example, 18 U.S.C. §§ 2312–2313 limit the transportation of an article with an innocent use, an automobile, when the transporter knows that it has been stolen. The court in *Grace v. United States, supra*, upheld 18 U.S.C. § 2312 as constitutional against a vagueness challenge and said:

> An automobile is an instrument of transportation, ordinarily innocent of itself, but when it has been stolen and is in the custody of the thief, or another who knows it is stolen, it has lost its innocent character.... The act is carefully drawn; it is not uncertain nor indefinite, ... We must hold that the act is constitutional and valid.

4 F.2d at 661.

Likewise, in construing the Travel Act, 18 U.S.C. § 1952, to require specific intent, the court in *United States v. Stagman*, 446 F.2d 489 (6th Cir. 1971), declared:

> Such a requirement [specific intent] would make sense in light of the nature of the crime proscribed by the statute. The act of traveling interstate or of using the facilities of interstate commerce is

inherently lawful, and Congress cannot have intended to make it a crime, without more. *Cf. Edwards v. California,* 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941). To eliminate the element of *mens rea* would make interstate travel or the utilization of facilities of interstate commerce a hazardous undertaking. The requirement that the jury must find that the defendant intended with bad purpose to violate the law of the state of destination would eliminate this danger, and would not, as suggested in the dissent, present an insuperable burden for the prosecution. Juries are regularly required to find a *mens rea* element in prosecutions under other statutes involving interstate activity such as the Dyer Act, 18 U.S.C. § 2312, and the Mann Act, 18 U.S.C. §§ 2421 *et seq.,* and there appears no reason why they would have any special difficulty under our construction of this legislation.

446 F.2d at 494.

*First Amendment Considerations*

 The advertisement of drug paraphernalia is not protected by the first amendment any more than the advertisement of prostitutes on television would be. The advertisement of illegal items has never been constitutionally protected speech, and Section 20–2–75 will make drug related objects illegal. The Supreme Court has said:

> Discrimination in employment is not only commercial activity, it is *illegal* commercial activity under the Ordinance. We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes. Nor would the result be different if the nature of the transaction were indicated by placement under columns captioned "Narcotics for Sale" and "Prostitutes Wanted" rather than stated within the four corners of the advertisement.

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Rights,* 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669, 678–9 (1973),[2] (citations omitted); rehearing denied 414 U.S. 881, 94 S.Ct. 30, 38 L.Ed.2d 128.

 Similarly, a book teaching the public how to use Swiss numbered bank accounts to avoid paying taxes legally owed to the United States Government—i. e., how to commit a tax fraud—would not be protected by the first amendment since it would be soliciting and teaching citizens to commit a fraud. Why would a book soliciting and teaching citizens how to use illegal drugs deserve more protection? Here, we are not speaking of prior restraints, but the later selling of the book, after publication.

The court has not been asked to determine whether the statute is constitutional as applied, and so it limits this holding to its facial validity. The mere fact that a statute may be unconstitutional as applied is not sufficient to make it facially invalid.

 Plaintiff complains that the statute is overbroad since it may restrict items with innocent uses. He says that an innocent item, like a hairbrush, could be restricted merely because of its design. However, the statute establishes function and intent as the criteria for drug relatedness. A hairbrush is not "useful primarily" for taking, etc., drugs. Moreover, innocent items may be regulated if the statute requires a specific mens rea. The Court in *United States v. International Minerals and Chemical Corp.,* supra, stated:

> In *Balint* the Court was dealing with drugs, in *Freed* with hand grenades, in this case with sulfuric and other dangerous acids. Pencils, dental floss, paper clips may also be regulated. But they may be the type of products which might raise substantial due process questions if Congress did not require, as in *Murdock,* "mens rea" as to each ingredient of the offense. But where, as here and as in *Balint* and *Freed,* dangerous or deleteri-

2. *See also* the Supreme Court's ruling in *Capital Broadcasting Co. v. Mitchell,* 333 F.Supp. 582 (D.D.C.1971), *aff'd* 405 U.S. 1000, 92 S.Ct. 1289, 31 L.Ed.2d 472 (1972), concerning the advertisement of cigarettes, a legal item.

ous devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation.

402 U.S. at 564–65, 91 S.Ct. 1701–02, 29 L.Ed.2d at 183. *See Balint, supra; United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356, *rehearing denied* 403 U.S. 912, 91 S.Ct. 2201, 29 L.Ed.2d 690 (1971).

The following are examples of statutes regulating otherwise legal substances that are prevented from being vague or overbroad by their requirement of a specific mens rea. A crowbar has many legitimate purposes. However, Section 13A–7–8, Code of Alabama 1975, says that the possession of a crowbar becomes illegal if a person intends to use the crowbar to commit a theft or forcible entry.

In the same way, a paper clip, or a pipe, has various legal purposes, but the existence of a specific mens rea element in the drug paraphernalia statute can make the sale of such items illegal.

Other examples of Alabama statutes which make the possession of items illegal only if a certain mens rea is present are Section 13A–9–9, criminal possession of forgery device; Section 13A–8–2, theft of property; Section 13A–7–28, criminal possession of noxious substances; Section 13A–12–24, possession of gambling records in the first degree; Section 13A–12–27, possession of gambling devices; Section 13A–11–34, criminal possession of eavesdropping device.

Similarly, if one gets permits and files the required forms one may use a still to distill alcohol for use in making gasohol. It is illegal, however, for the same still to be used to make alcohol for drinking purposes. Hence, intent, not possible use, is the issue, as in the statute here under consideration.

In *McKoy v. United States*, 263 A.2d 645 (D.C.App.1970), the court said that certain items used in taking drugs are inherently dangerous and added:

Narcotics paraphernalia, including such items as hypodermic needles, syringes, and cookers, are considered implements that are usually employed in the crime of illegal administration of narcotics, D.C. Code 1967, § 33–402(a); e. g. *Edelin v. United States*, D.C.App., 227 A.2d 395, 397 (1967). The only possible use of the complete narcotics "kit" found in appellant's possession is to administer heroin, a fact that abundantly supplies the requisite criminal intent . . .

263 A.2d at 649.

Consequently, plaintiff's argument contains no merit.

■ The burden of proving selective enforcement rests upon the complainant, and this burden is a heavy one to carry. Police officers are not required to arrest everyone, and once discrimination has been proved, law enforcement officials may establish their right to choose "test" cases for prosecution as a defense. In *Southway Discount Center, Inc. v. City of Birmingham*, CA 75–P–0792–S (N.D.Ala., Feb. 9, 1976), appeal dismissed 568 F.2d 456 (5th Cir. 1978), the court said:

But to shift this burden of explanation upon the defendants, the plaintiff must first establish a prima facie case of discrimination. More than mere unequal enforcement is required to constitute discrimination of the sort condemned as unconstitutional in *Yick Wo*. For the unequal enforcement to be discrimination against the plaintiff, he must show either that the disparity is based upon some constitutionally impermissible standard, such as race, or that the enforcement differs as between himself and others similarly situated. In a case such as the one *sub judice*, it is insufficient to show nonenforcement against violators who are only indirectly in competition with the plaintiff. *Zayre v. Marietta*, 416 F.2d 251 (5th Cir. 1969).

*See Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

■ Plaintiff complains of selective enforcement, but he has not shown any. Plaintiff has only shown that police gave

warnings to people whom they considered to be patently in violation of the statute, and such evidence does not even begin to show selective enforcement. All the proprietors given warnings were head shop owners, i. e., proprietors similarly situated. Tobacco shops, children's book stores, and certain other traditional shops, because of their different atmosphere, clientele, or advertisements are not similarly situated to a head shop. However, that is not to say that police will not begin actively enforcing the law against such places. All plaintiff has shown is that the police, exercising common sense, began at the most obvious places first with their warnings.

Law enforcement officers are not required to make an arrest in a situation where, in their discretion, they cannot establish a prima facie case against an individual. *See United States v. Cox,* 342 F.2d 167 (5th Cir. 1965) *cert. denied* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700; *United States v. Cowan,* 524 F.2d 504 (5th Cir. 1975); *Shaw v. Garrison,* 467 F.2d 113 (5th Cir. 1972) *cert. denied* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317. Intent is much more difficult to prove when factors like the atmosphere, decorations, drug–pushing ads, and clientele that characterize a head shop are missing.

The contentions of plaintiff not discussed herein have not been seriously argued; in fact, most of them not argued at all. In any event, those not discussed are not worthy of serious consideration.

*Conclusion*

All statutes require some interpretation. *United States v. Hover,* 268 F.2d 657 (9th Cir. 1959). It is the duty of the court to construe a statute so as to preserve its constitutionality when such a construction is possible. Since there is abundant internal evidence that the Alabama legislature intended that the accused be required to have a specific criminal intent, the court so construes the statute. Since it is well settled that such an intent will uphold an otherwise vague statute, this court holds that Section 20–2–75 of the Code of Alabama 1975, as amended May 23, 1980, is constitutional, except that the court finds that the constructive knowledge provisions of Section 1(2) are unconstitutional.

The court further holds that the Alabama drug paraphernalia statute is constitutional as against the other attacks made upon it herein.

A separate judgment so ordering will be entered.