Possession of a counterfeit substance; ten years.
The State's evidence proved that two Scottsboro police officers, armed with a search warrant, went to appellant's residence, showed her the warrant, and told her they were authorized to search for Quaaludes or methaqualone. Upon reading the warrant, appellant replied, "All that's here are those old fake pills," or "That's those old pills I have in the back room," or words to that effect. The appellant then brought out a bottle containing 415 white pills stamped "LEMMON 714" and scored on the back.
One of the officers familiar with the appearance of Quaaludes testified that the pills looked exactly like those containing the controlled substance to him. A preliminary analysis of the pills at Scottsboro police headquarters, however, indicated they did not contain the controlled substance methaqualone. The toxicologist's analysis, and later testimony, confirmed the finding that the capsules did not contain methaqualone or any other controlled substances, but compounds resembling aspirin and antihistamine.
An official of the Lemmon Corporation testified that his company manufactured a drug containing methaqualone, under the trade name "Quaalude." The pill is stamped "LEMMON 714" and scored on the reverse side. He testified that the pills found at appellant's residence were not manufactured by his company although they were "a very good imitation." He also stated that Lemmon had not authorized anyone to make a facsimile Quaalude.
 I
Appellant claims that her conviction should be reversed because § 20-2-70 (b) of the Alabama Code 1975, was misconstrued to apply to her, or, if properly construed in its application to her, is unconstitutional.
Read in conjunction with the relevant prohibition of subsection (a), § 20-2-70 (b) provides that "any person who [possesses] a counterfeit substance enumerated in schedules I through V is guilty of a felony. . . ." "Counterfeit substances" is defined in § 20-2-2 (6) as follows:
 "Substances which, or the container or labeling of which, without authorization, bears the trademark, trade name or other identifying mark, imprint, number or device or any likeness thereof of a manufacturer, *Page 1123 
distributor or dispenser other than the person who in fact manufactured, distributed or dispensed the substance."
Appellant's first argument is one of statutory construction. She contends that there are no "counterfeit substances[s] enumerated in schedules I through V"; and that because all the drugs listed there are genuine controlled substances, the prohibition of the statute is meaningless. Next, she claims that, since she was indicted for possession of a "counterfeitcontrolled substance" rather than for possession of a "counterfeit substance," the indictment does not apply to the pills in question here.
According to appellant's argument, a "counterfeit substance" is an innocent compound made to look like a controlled drug (an aspirin resembling a Quaalude), while a "counterfeit controlled substance" is one controlled drug made to look like another (heroin fashioned to resemble a Quaalude).
While we acknowledge the ambiguity of the statute, in our judgment both of these arguments are answered by a review of the legislative history and judicial construction of § 20-2-70
(b) and its predecessor.
The predecessor to the current statute set out a prohibition on "counterfeit drugs" rather than on "counterfeit substances."
See 1967 Ala. Act 252, § 2 (j) (August 24, 1967). However, apparently in response to the holding of Vann v. State,44 Ala. App. 664, 219 So.2d 649 (1969), that section was repealed and replaced by § 20-2-70 (b). See 1971 Ala. Act No. 1407 (September 16, 1971).
In Vann, the court determined, based on the same reasoning that appellant now advances, that an indictment for possession of a "counterfeit drug" was insufficient unless it named two controlled substances: the drug possessed and the drug it was supposed to resemble. Thereafter, evidently in order to remedy the defect announced by the Vann court, the legislature altered the wording of the section to read "counterfeit substance." Perhaps a more precise wording would have been "counterfeit of
a substance."
In any event, based on the change in wording of the statute, presumedly in response to the judicial determination that a "counterfeit drug" meant one controlled substance made to look like another, we believe the legislature's intent in drafting §20-2-70 (b) was to proscribe the possession, sale, etc., of any
substance (controlled or uncontrolled) which is a facsimile or imitation of a particular, identifiable controlled substance.
In view of our disposition of this appeal, based upon appellant's next argument, it is unnecessary to determine the sufficiency of the indictment.
 II
Appellant contends that § 20-2-70 (b) is unconstitutionally vague and overbroad. While the statute does not offend the doctrine of overbreadth, it is, in our judgment, impermissibly vague as it applies to possession of a counterfeit substance.
The overbreadth doctrine derives from the First Amendment,see Young v. American Mini Theaters, 427 U.S. 50,96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Parker v. Levy, 417 U.S. 733,94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and serves to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally-protected rights of free speech, press, or assembly, see, e.g., Coates v.Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Since there are no First Amendment rights at stake here, the overbreadth doctrine does not apply. See Village of HoffmanEstates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497
n. 9, 102 S.Ct. 1186, 1192 n. 9, 71 L.Ed.2d 362 (1982).
The doctrine of vagueness, on the other hand, originates in the due process clause of the Fourteenth Amendment, seeLanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618,83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, see United States v. National Dairy ProductsCorporation, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). *Page 1124 
Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v.Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989,996 (1954). A vague statute does not give adequate "notice of the required conduct to one who would avoid its penalties,"Boyce Motor Lines v. United States, 342 U.S. 337, 340,72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (1951), is not "sufficiently focused to forewarn of both its reach and coverage," UnitedStates v. National Dairy Products Corporation, 372 U.S. at 33,83 S.Ct. at 598, 9 L.Ed.2d at 566, and "may trap the innocent by not providing fair warning," Grayned v. City of Rockford,408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28
(1972).
As the United States Supreme Court observed in Winters v. NewYork, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948):
 "There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, or in regard to the applicable tests to ascertain guilt."
333 U.S. at 515-16, 68 S.Ct. at 670, 92 L.Ed.2d at 849-50
(citations omitted).
The Winters Court overturned a conviction for possession with intent to sell magazines "devoted to the publication and principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime." Id. Noting that the provision contained no "ascertainable standard of guilt," the Court determined that "[w]here a statute is so vague as to make criminal an innocent act, a conviction under it cannot be sustained." 333 U.S. at 520, 68 S.Ct. at 672, 92 L.Ed. at 852.
Citing Winters v. New York, the Alabama Supreme Court struck down, as unconstitutionally vague, an act punishing "any male who gazes into any place of abode, not his own or under his control, which is occupied by a female," in Kahalley v. State,254 Ala. 482, 48 So.2d 794 (1950). The court commented that the statute
 "marks no line between lawfulness and criminality, condemning all acts alike of the kind specified and as applied, would affect innocent beings in the ordinary pursuits of life. It leaves open the widest conceivable inquiry, the scope of which no one could foresee and the results of which no one could foreshadow and adequately guard against."
254 Ala. at 483, 48 So.2d at 795.
Later, in Esco v. State, 278 Ala. 641, 179 So.2d 766 (1965), the Alabama court invalidated that portion of an enactment penalizing "any person who changes or alters his name to conceal his identity," as uncertain and indefinite. The court observed that every name change is accomplished to conceal identity, and in the absence of a requirement of fraudulent intent, the statute penalized "conduct . . . which could not be proscribed as criminal." 278 Ala. at 645, 179 So.2d at 770.
Like the Kahalley court which listed numerous instances of innocent activity the "Peeping Tom" statute might penalize(e.g., the postman trying to deliver a package, who peeps inside to see if anyone is home; the concerned neighbor who smells smoke and looks inside to see if he can help), the Esco
court also demonstrated how the "name change" statute could include blameless conduct (e.g., the author who uses a pen name; the undercover detective who assumes an alias to ferret out crime).
Similarly, § 20-2-70 (b) "marks no line between lawfulness and criminality," Kahalley v. State, supra. It proscribes the possession of a substance which, by its nature, is essentially harmless. A "counterfeit substance" becomes injurious to the public health, safety or welfare only with the addition of a specific intent on the part of its possessor to pass it off or to represent it as genuine.
Generally, all criminal statutes must contain the element of scienter. See Morissette v. United States, 342 U.S. 246,72 S.Ct. 240, 96 L.Ed. 288 (1952); Rogers v. State, *Page 1125 23 Ala. App. 149, 122 So. 308 (1929), "The existence of a mens rea
is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Dennis v. UnitedStates, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137,1147 (1951).
Although a state may create strict liability offenses, the power to do so is limited by "the constitutional command that no person can be `deprived of life, liberty, or property, except by due process of law.'" Walker v. State, 356 So.2d 672,673 (Ala. 1977); see Ala. Const. Art. I, § 6 (1901); Smith v.California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).
In Walker v. State, supra, the Alabama Supreme Court recognized the State's authority under the police power "to impose strict liability in connection with a variety of regulatory statutes for what are commonly called `public welfare offenses,'" 356 So.2d at 673, but it held that the Alabama Controlled Substances Act was not one of those statutes.
The court observed that, because the penalties for violation of the act were severe (two to fifteen years' imprisonment and a fine up to $25,000), criminal sanctions could be imposed under the act "only for blameworthy conduct." 356 So.2d at 674. It determined that knowledge must be an essential element of illegal possession of a controlled substance.
In appellant's case, we are not dealing with illegal possession of a controlled substance, but with illegal possession of items resembling a controlled substance. Thus, some mental element other than simple knowledge of the resemblance must be present in order to make possession of the substance "blameworthy." See Gasser v. Morgan, 498 F. Supp. 1154,1166 (N.D.Ala. 1980). We believe, at the minimum, a specific intent to represent the substance as genuine is necessary.
The lack of a specific intent requirement in the statute becomes even more apparent in view of the legislative history of the enactment. Act Number 1407, 1971 Ala. Acts 2378 (September 16, 1971) (codified at Ala. Code §§ 20-2-2 et seq.) states the following purposes:
 "To provide a Uniform Alabama Controlled Substance Act for preventing drug abuse and drug dependence, to standardize all laws in this state to be in conformity with the new Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, and to repeal existing state statutes in conflict."
The federal counterpart of § 20-2-70 (b) provides, in pertinent part, the following:
 "(A) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally —
. . . .
 "(2) to create, distribute, or dispense, or possess with the intent to distribute or dispense a counterfeit substance."
21 U.S.C. § 841 (1970) (emphasis added). The federal definition of "counterfeit substance" is virtually identical to Alabama's definition of the term, except that, after the final word of the Alabama definition at § 20-2-2 (6), the United States Code provision adds the following:
 "and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser."
21 U.S.C. § 802 (7) (1970). The emphasized language of both the penalty provision and the definitional section in the United States Code indicates that the federal statutes do not suffer from the same vagueness problems as the Alabama statutes. Section 841 requires specific intent. Section 802 (7) requires not only some resemblance to a controlled substance or its container, but a resemblance which "thereby falsely purports or is represented to be" the genuine article.
Because the Alabama statute sets out no scienter requirement, it fails to give fair warning to someone in appellant's position of the type of conduct which will be considered criminal. Furthermore, because the definition of the term "counterfeit substance" is so uncertain that it does not distinguish between innocently or inadvertently mis-labelled substances and those *Page 1126 
which, by their incorrect markings, purport — or are held out — to be the genuine article, the statute provides no "ascertainable standards of guilt" and "may trap the innocent."Winters v. New York, supra; Grayned v. City of Rockford, supra.
In our judgment § 20-2-70 (b), as it pertains to possession of counterfeit substances, is unconstitutionally vague for its failure to specify either the "intent" of the possessor or the "purpose" of the mismarked substance which will be deemed criminal. See Winters v. New York, 333 U.S. at 519,68 S.Ct. at 672, 92 L.Ed. at 851-52; Esco v. State, supra; Kahalley v.State, supra.
We note that the recent holding of the United States Supreme Court in Village of Hoffman Estates v. Flipside, HoffmanEstates, Inc., supra, though not based on a criminal statute, supports our conclusion that specific intent is a necessary ingredient for fair warning in a criminal provision. In HoffmanEstates, the Court had before it a vagueness challenge to an Illinois regulatory ordinance requiring a license to sell drug paraphernalia.
The test applied by the Court to the Illinois enactment was whether the defendant merchandiser of drug-related items had adequate notice that its display of paraphernalia was regulated by an ordinance requiring a license for the following:
 "any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs. . . ."
Hoffman Estates, Appendix (emphasis added). Focusing on the emphasized portion of the ordinance, the Court held that the enactment
 "requires scienter, since a retailer could scarcely `market' items `for' a particular use without intending that use. Under this test Flipside had ample warning that its marketing activities required a license."
102 S.Ct. at 1195. The Court also observed:
 "[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."
102 S.Ct. at 1193.
It is significant that the test of "ample warning" was satisfied by a scienter requirement in Hoffman Estates since that case dealt with a business regulation carrying only "quasi-criminal" sanctions, 102 S.Ct. at 1194, whereas the case before us concerns a purely criminal statute with "severe penalties," Walker v. State, supra. Acknowledging that the test it applied to the Illinois ordinance was "less strict" than one it would apply to a criminal statute, 102 S.Ct. at 1193, the Court recognized that:
 "The degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depend in part on the nature of the enactment."
102 S.Ct. at 1193.
We therefore hold, based on Walker v. State, supra, and the line of vagueness cases decided by the Alabama and United States Supreme Courts, that the statute under review here does not provide sufficient warning of what conduct is prohibited, and it is thereby unconstitutionally vague.
We have no choice except to reverse and remand this case for the constitutional infirmities noted. Although a court may cure the vagueness of a statute by interpreting it to include a specific intent when none is required by the literal wording of the enactment, see United States v. International Minerals andChemical Corporation, 402 U.S. 558, 91 S.Ct. 1697,29 L.Ed.2d 178 (1971); Boyce Motor Lines v. United States, supra; Gasserv. Morgan, 498 F. Supp. 1154 (N.D.Ala. 1980), it may imply the necessary intent only if it determines that the legislature intended a specific mens rea to be an element of the crime,United States v. Balint, 258 U.S. 250, 42 S.Ct. 301,66 L.Ed. 604 (1922). See also Morissette v. United States, 342 U.S. 246,72 S.Ct. 240, 96 L.Ed. 288 (1952).
In the case before us, we must conclude, based on the history of the Controlled Substances Act, that the legislature did not *Page 1127 
intend to include the element of intent. As Judge Bowen, writing for this court in State v. Spurlock, 393 So.2d 1052
(Ala.Crim.App. 1981) observed:
 "Alabama adopted the substance of the major provisions of the Uniform Act. . . . This section was an addition to the Uniform Act. In making it a part of Alabama's `uniform act,' the legislature had the opportunity to conform it to the language of the various penal provisions within the Uniform Act. This omission, when considered in the context of the entire act, makes it clear that it was the intention of the legislature not to include any element of intent, willfulness or knowledge. . . . Since the intent of the legislature is clear, this Court cannot declare it otherwise."
393 So.2d at 1055, 1058.
Since Alabama's act parallels the federal legislation, and one of its stated goals is "conformity with the Federal [Act]" 1971 Ala. Acts 2378, No. 1407, supra, we must presume that any non-conformity was purposeful, and the legislature did not intend to add the element of specific mens rea to the statute.
We note, without expressing any opinion of its validity, the existence of an act recently passed by the legislature entitled the "Imitation Controlled Substances Act" which appears to be directed at the same subject matter as that addressed in §20-2-70 (b). See 1982 Ala. Acts 670, No. 426 (May 4, 1982).
For the foregoing reasons, the judgment of conviction is reversed, and the cause remanded to the Jackson Circuit Court.
REVERSED AND REMANDED.
All the Judges concur.