**STATE of Utah, Plaintiff and Respondent,**

v.

**Timmy HILL, Defendant and Appellant.**

**No. 19275.**

Supreme Court of Utah.

April 26, 1984.

John T. Caine, Bernard L. Allen, Maurice Richards, Ogden, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant Timmy Hill received $2,100 in cash from an undercover agent in exchange for one ounce of baking soda wrapped in newspaper that the defendant claimed was "good" cocaine. He now appeals from a jury conviction of theft by deception, a second degree felony in violation of U.C.A., 1953, § 76-6-405.

Defendant contends that he was improperly charged under § 76-6-405 of our criminal code, which provides in pertinent part:

(1) A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof.

Instead, he claims he should have been charged under U.C.A., 1953, § 58-37b-4, contained in the Imitation Controlled Substances Act that specifically proscribes the conduct with which he was charged. That section provides:

Manufacture, distribution or possession of substance unlawful—Penalty. *It is unlawful for any person to* manufacture, *distribute,* or possess with intent to distribute, *an imitation controlled substance.* Any person who violates this section shall be guilty of a class B misdemeanor and upon conviction may be imprisoned for a term not exceeding six months, fined not more than $299, or both. [Emphasis added.]

Section 58-37b-2(4) of the same act defines:

(4) "Imitation controlled substance" means a substance that is not a controlled substance, which by overall dosage unit substantially resembles a specific controlled substance in appearance (such as color, shape, size, and markings), or by representations made, would cause a reasonable person to believe that the substance is a controlled substance.

■ We adhere to the principle that when an individual's conduct can be construed to be a violation of two overlapping statutes, the more specific statute governs. See *Helmuth v. Morris,* Utah, 598 P.2d 333 (1979). See also *State v. Shondel,* 22 Utah 2d 343, 453 P.2d 146 (1969), where we held that two statutes which interdicted the same conduct but imposed different penalties entitled the violator to the lessor punishment.

In this case, the foregoing principle is buttressed by U.C.A., 1953, § 58-37-19, which provides in relevant part:

[W]henever the requirements prescribed, the offenses defined or the penalties imposed relating to substances controlled by this act shall be or appear to be in conflict with Title 58, Chapter 17 or any other laws of this state, the provisions of this act shall be controlling.

In *State v. Hicken,* Utah, 659 P.2d 1038 (1983), we affirmed the dismissal of an information charging the defendant with aiding and abetting the distribution of a controlled substance for value because a specific provision of the controlled substance act, § 58-37-8(1)(a)(iv), which prohibits the arranging of a sale of controlled substances, directly covered the defendant's conduct and thus exclusively governed the offense. We cited *Helmuth v. Morris,* Utah, supra, as controlling.

■ The Imitation Controlled Substances Act, Chapter 37b, Title 58, was enacted in 1982, years after enactment of the Utah Controlled Substances Act, Chapter 37, Title 58. Nonetheless, § 58-37-19 of the Controlled Substances Act is applicable to Chapter 37b offenses since the two acts are

integrally connected. For example, in its definition section, the Imitation Controlled Substances Act cites to the Controlled Substances Act for definition. The more recent act also provides an exemption for persons registered under the Controlled Substances Act. Consequently, where specific conduct is proscribed by the Imitation Controlled Substances Act, its provisions should control as mandated by § 58–37–19.

■ Section 58–37b–4 proscribes defendant's conduct. Unquestionably the defendant made representations that would have caused a reasonable person to believe that the baking soda was cocaine. The fact suggested by the State that ingested baking soda would not produce effects similar to cocaine is unavailing. The baking soda sufficiently resembled cocaine so that combined with defendant's representations that it was "good" cocaine, it was an imitation controlled substance. (See U.C.A. § 58–37b–3 for considerations involved in determining whether a substance is an imitation controlled substance where appearance alone may be insufficient to establish that fact.)

By exchanging the baking soda for money, the defendant committed the distribution of an imitation controlled substance. The definition of "distribute" under § 58–37b–2 of the Imitation Controlled Substances Act is:

> Distribute means the actual, constructive, or attempted sale, transfer, delivery, or dispensing to another of an imitation controlled substance.

Were it not for the inclusion of "sale" in the definition of distribute, the State's argument that the defendant committed theft by deception of the $2,100 might be more persuasive. However, as the statutes are

written, exchanging baking soda for money is distribution of an imitation controlled substance in violation of § 58–37b–4. That provision covered defendant's conduct, and he should have been charged with its violation.

Judgment reversed.

STEWART and DURHAM, JJ., concur.

HALL, Chief Justice (dissenting):

I do not share the view of the Court that the deception engaged in by the defendant in violation of U.C.A., 1953, § 76–6–405 [1] also constituted a violation of the Utah Imitation Controlled Substances Act.[2]

The defendant unequivocally represented the baking soda as being "good" cocaine. He made no representation whatsoever that the baking soda was an "imitation controlled substance" as defined by statute.[3] Indeed, baking soda has none of the properties of cocaine and only resembles it in general appearance.

Utah's Imitation Controlled Substances Act is patterned closely after the Model Imitation Controlled Substances Act drafted by the Drug Enforcement Administration (DEA), United States Department of Justice.[4] The Prefatory Note to the Model Act[5] states the reasons it was felt necessary to draft legislation dealing with look-alike drugs. In sum, the clear thrust of the Act is to reach dealers who sell tablets, capsules, powders and liquids that "closely resemble or even duplicate the appearance of well-known, brand name controlled substances, but which contain only non-controlled over-the-counter drugs such as caffeine, ephedrine, phenylpropanolamine, acetaminophen, or some combination of these

---

1. That theft by deception is a legitimate charge, see, e.g., *Pritchard v. State*, Alaska App., 673 P.2d 291 (1983); *Commonwealth v. Jones*, 259 Pa.Super. 103, 393 A.2d 737 (1978).

2. U.C.A., 1953, § 58–37b–1, *et seq.*

3. U.C.A., 1953, § 58–37b–2(4).

4. A number of other states have adopted some form of the Model Act. *See, e.g.,* Alaska Stat. § 11.73.010, *et seq.* (Supp.1983); Ariz.Rev.Stat.

Ann. § 13–3451–1 (Supp.1983); Colo.Rev.Stat. § 18–5–601 (Supp.1983). However, to date no court has interpreted the progeny of the Model Act and only one court has mentioned it in passing. *McCrary v. State*, Ala.Cr.App., 429 So.2d 1121 (1982).

5. October, 1981, p. 2a.

substances." [6] These look-alikes are being advertised and widely circulated, particularly among the school age population as "the 'safe' legal way to get high." [7] This contributes to the growing drug problems in our schools by fostering acceptability of drug ingestion, which, in turn, often leads to experimentation with controlled drugs or to tragic accidents when the real thing is ingested by mistake.

Thus, the clear intention of the Act is to deal with manufacturers, distributors and users of drugs that are not claimed to be the real thing but that look like the real thing and have a like effect. Certainly, baking soda does not fit that category, nor is there any indication that the DEA intended to reach persons who were selling non-drug substances, such as baking soda, representing them as controlled substances, such as cocaine. Similarly, there is no indication that the Utah Legislature intended the Imitation Controlled Substances Act to apply other than to the conduct discussed by the DEA.

I view the Imitation Controlled Substances Act as not having any application to defendant's conduct, and I would therefore affirm his conviction of theft by deception.

OAKS, J., concurs in the dissenting opinion of HALL, C.J.

OAKS, Justice (dissenting):

Representing baking soda as cocaine, defendant sold an ounce to an undercover agent for $2,100. The majority now reverses his conviction of the second degree felony of theft by deception, U.C.A., 1953, § 76-6-405, on the basis that he should have been charged with a violation of the Imitation Controlled Substances Act, § 58-37b-4, a Class B misdemeanor. The apparent holding that a Criminal Code conviction will be reversed when the defendant could have been charged under any of the statutes regulating drugs is a principle that can work untold mischief in the administra-

tion of the criminal law. That principle should not be adopted without the clearest direction from the Legislature or the prior decisions of this Court. Neither the statute nor the case relied on by the majority dictates that principle, and I dissent from the Court's establishing it in this case.

Section 20 of the Utah Controlled Substances Act of 1971, codified at § 58-37-19, quoted by the majority, makes the provisions of that Act "controlling" in case of any conflicts with tit. 58, ch. 17 (the licensing of pharmacists and the sale of drugs and medicines) "or any other laws of this state ...." Even if that section would cause the Controlled Substances Act to prevail over conflicts with the later-enacted Criminal Code of 1973, section 20 cannot reasonably be read to supersede the effect of a Criminal Code provision that covers the same crime treated in the *Imitation* Controlled Substances Act of 1982, §§ 58-37b-1 to -8, an entirely different enactment. The majority applies the 1971 provision to the 1982 Act on the basis that "the two acts are integrally connected," but it does not explain what that means or why it dictates this result. In contrast, I suggest that a rule that conduct made felonious by the Criminal Code shall no longer be punishable under that Code is sufficiently radical that it should only be inferred from a clear legislative direction. There is no such direction as to the *Imitation* Controlled Substances Act relied on by the majority.

*Helmuth v. Morris*, Utah, 598 P.2d 333 (1979), provides no support for the reversal of defendant's conviction or for the general rule espoused by the majority. That case only concerned the lawfulness of the sentence imposed on the petitioner for the felony of uttering a forged prescription under the Controlled Substances Act. *Id.* at 335. Petitioner attacked the legality of that sentence by habeas corpus, contending that he was "entitled to the lesser punishment" prescribed in the Criminal Code for the misdemeanor of forgery. *Id.* The Court rejected that contention because (1)

6. *Id.*

7. *Id.*

the two offenses were "of an entirely different nature" (a ground that applies just as well to the theft and distribution offenses involved in this case), and (2) the Controlled Substances Act "takes precedence" over the Criminal Code in this circumstance because it "applie[d] more specifically" to petitioner's offense. *Id.*

*Helmuth's* holding that the petitioner was not entitled to the lesser sentence under the Criminal Code obviously falls far short of dictating that the present defendant's conviction under the Criminal Code should be reversed because he might have been charged with a lesser offense under the Imitation Controlled Substances Act. *Helmuth* surely does not establish what the majority refers to as "the principle that when an individual's conduct can be construed to be a violation of two overlapping statutes, the more specific statute governs" (p. 2).

I would affirm defendant's conviction for theft by deception.